RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0056p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellant,*

      *v.*

RUFUS ROBINSON,

                *Defendant-Appellee.*

No. 09-1959

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-20091-001—Arthur J. Tarnow, District Judge.

Argued: July 22, 2011

Decided and Filed: February 27, 2012

Before: COLE and ROGERS, Circuit Judges; SARGUS, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Kevin M. Mulcahy, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Kimberly W. Stout, Birmingham, Michigan, for Appellee. **ON BRIEF:** Kevin M. Mulcahy, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Kimberly W. Stout, Birmingham, Michigan, for Appellee.

_____

**OPINION**

_____

SARGUS, District Judge. Rufus Robinson pled guilty to knowingly possessing over 7100 images of child pornography on his computer. Some of the images involved the bondage, torture, and rape of prepubescent children. Under the Sentencing

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

Guidelines, Robinson's recommended sentence was 78 to 97 months' imprisonment. The district court rejected that recommendation and imposed a sentence of one day in custody, a term of supervised release of five years, and a $100 special assessment. The United States contends that Robinson's sentence is both procedurally and substantively unreasonable. We agree that the sentence is substantively unreasonable, and vacate his sentence.

## I. BACKGROUND

In April 2006, Robinson subscribed to an online website which allowed him, for a fee, to access large amounts of child pornography. Robinson used a credit card and paid a fee to subscribe to the site. As part of a national investigation, agents from the Bureau of Immigration and Customs Enforcement ("ICE") later identified the website as a pay-for-subscription child pornography website. ICE agents gathered the credit card information for the subscribers of the site, including Robinson.

In October 2007, ICE agents came to Robinson's home and informed him that he was suspected of possessing child pornography. Robinson permitted the agents to conduct a forensic preview as well as a full examination of both computers located in his residence. He told the agents that he lived alone and was the only person with access to the computers. Between the two computers and a collection of CDs and DVDs, agents found over 7100 images of child pornography. Some of the images involved the bondage, torture, and rape of prepubescent children.

Robinson later pled guilty without a plea agreement to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). In calculating the applicable Sentencing Guidelines range, the parties agreed that the U.S. Probation Office had correctly determined, under U.S.S.G. § 2G2.2(a)(1), that Robinson's base offense level was 18. Two levels were added because the material depicted prepubescent juveniles; four levels were added because the material portrayed sadomasochistic or violent content; two levels were added for the use of a computer; and five levels were added because the offense involved more than 600 images. This netted to an offense level of 31, which was reduced by three levels for Robinson's acceptance of

responsibility.  Robinson had no significant criminal record and scored no criminal history points, which placed him in Criminal History Category I.  Robinson's adjusted offense level was 28, which, with a criminal history category of I, resulted in a guidelines range of 78 to 97 months.  The Presentence Report ("PSR") recommended a sentence within the guidelines range.  Neither Robinson nor the government objected to the PSR.

Prior to sentencing, Robinson was examined by Dr. Dennis P. Sugrue, a psychologist.  In a narrative report ("Report"), Dr. Sugrue described in detail Robinson's psychological condition, reported the results of three psychometric tests, and rendered a series of conclusions and opinions.  The first psychometric finding reported the results of a Millon Clinical Multiaxial Inventory-III ("MCMI III").  The MCMI III is "designed to identify both acute and characterological psychiatric conditions." (Report at 6.)  Dr. Sugrue concluded from the MCMI III that Robinson did not suffer from "antisocial or sociopathic tendencies."  (*Id.*)

The second test, Multiphasic Sex Inventory II—Adult Male Form ("MSI II"), is designed to measure the sexual characteristics of an adult male sex offender.  From an examination of Robinson's responses, Dr. Sugrue found that Robinson was not addicted to pornography, and either did not or could not "acknowledge ever having had sexual fantasies or desire involving children that would lead him to seek child pornography.  He nevertheless acknowledges having sought and obtained pornography involving children." (Report at 7.)

The third test, STATIC-99, is designed to assist in the prediction of sexual and violent recidivism for sexual offenders.  The test produces estimates of future risk based upon the number of risk factors present in any one individual, primarily measuring prior sex offenses or crimes of violence.  As Dr. Sugrue notes, "the STATIC-99 and most other risk assessment scales have not been normed for individuals possessing child pornography." (Report at 8.)  Dr. Sugrue found that "Robinson scored in the lowest risk category relative to other adult male sex offenders."  (*Id.*)

Incorporating the results of the three tests into a conclusive summary, Dr. Sugrue noted that Robinson did not appear to be a pedophile. The conclusions offered by Dr. Sugrue, however, related solely to the question of whether Robinson is a pedophile and whether he is likely to sexually abuse a child, a crime for which he was not charged. Dr. Sugrue concluded that, to date, the only scientifically valid method of determining the risk of new offenses involving child sex offenses is based upon the presence of prior, similar offenses. Based on Robinson's testing failure to show evidence of an antisocial personality, his lack of criminal history, and scoring in the lowest risk category, Dr. Sugrue stated that "[o]ffenders who score in the low range of risk assessment inventories are generally considered appropriate for community supervision and treatment." (Report at 10.) In addition, Dr. Sugrue did not conclude that Robinson suffered from any significant mental health disorder.

At sentencing, Robinson's counsel urged the district court to vary from the guidelines range and consider a lengthy probationary term. Robinson's counsel asked the district court to consider that, per the report of Dr. Sugrue, Robinson was neither dangerous nor a predator. Further, Robinson's counsel requested the court take into account Robinson's initial cooperation with investigating agents, his lack of criminal history, his attendance at counseling, and his painful, debilitating back condition. The government requested a sentence within the guidelines range, emphasizing that Robinson and others created a market for child pornography. In its sentencing memorandum, the government asserted that the willingness of Robinson to pay a subscription to a child pornography website provided direct financial incentive to producers of such materials and could have led to the abuse of actual children.

The district court began by correctly calculating the sentencing guidelines range. It then reviewed in considerable detail the sentencing factors set forth in 18 U.S.C. § 3553(a). The court noted that Robinson had no criminal history points, was in need of continued counseling, and would be categorized as a felon for the rest of his life. The district court then stated:

And obviously dangerousness is a factor. And for the reasons that I have concluded that you're going to be deterred by the fact that you have a felony conviction and have gone through this experience, it also leads me to the conclusion you're not going to be dangerous to anybody. And that's supported by what I consider to be a very comprehensive report attached to the Sentencing Memorandum, the psychological report.

(R. 25 at 16.) The district court further noted:

And now I'm going to refer to what has been marked as Exhibit B, which is a psychological evaluation of Rufus R. Robinson—that is you—that's dated September 26th of 2008. And I'm not going to read the entire thing. I am going to summarize.

The things I'm going to summarize include that you were given what the writer refers to as psychometric findings. In other words, you were given objective tests that are recognized in the field to predict as best as anything can or to evaluate your dangerousness. And the writer found that: "It is important to note that there was no evidence on Mr. Robinson's MCMI profile to suggest the presence of antisocial or sociopathic tendencies." MCMI stands for Millon Clinical Multiaxial Inventory III. That's the third part of it.

And they did another test or another set of inventory questions that show that you weren't deceiving or lying on the test. They are control questions. And it goes in great detail. And because of the detail of this report and because I'm including it in the record, I'm going to seal this transcript for obvious reasons—well, for the same reasons I sealed the presentence memorandum for the Defendant. And overall the conclusion—and this is at page eight. "On the STATIC-99, Mr. Robinson scored in the low risk category relevant to other adult male sex offenders. Offenders who score in this low range are generally considered appropriate for community supervision and treatment."

And then, finally, in the writer's conclusions and recommendations at pages 9 and 10, it includes a conclusion that you're not a pedophile and gives the reasons of—gives his reasons of how he got to that conclusion. And, therefore, I am comfortable in varying to the degree that I'm varying.

(R. 25 at 23–25.) Finally, the court concluded:

But I think the important part of the report is the answer to the first question posed by the writer, which was is he a pedophile or not. And the conclusion was, not.

(R. 25 at 26.) The district court also stated that "this court believes that the Defendant will not benefit from incarceration," "[h]e has voluntarily sought counseling," and "he does not render any recidivism factors for future behavior with children." (R. 25 at 23.) The court then contrasted possession of child pornography with some related offenses—such as its production and distribution—that the court regarded as more serious. The court also emphasized Robinson's employment history, attitude, age, and again reiterated his lack of significant criminal history.

The district court then sentenced Robinson to one day of imprisonment, with credit for time already served, followed by a period of supervised release for five years, and a $100 special assessment. The terms of supervised release contained no significant special conditions. The government immediately objected to the court's downward variance. It then brought this appeal.

## II. DISCUSSION

On appeal, the government contends that Robinson's one-day sentence was unreasonable on two grounds. First, the government contends that the sentence imposed was procedurally unreasonable because the district court committed several factual errors at the sentencing hearing. Most importantly, the government contends the district court mischaracterized the conclusions of the psychological report. Second, the government contends that the sentence imposed was substantively unreasonable because the district court failed to consider several of the § 3553(a) factors relevant to this case. The parties also dispute whether our review should be for an abuse of discretion as to reasonableness or for plain error.

The scope and extent of our review was explained in *United States v. Booker*, 543 U.S. 220, 260–262 (2005). *Booker* invalidated that portion of the Sentencing Reform Act which, under 18 U.S.C. § 3553(b)(1), directed the courts of appeals to apply a *de novo* standard of review to sentences outside the Sentencing Guidelines. *Id.* Further, the Court held that the standard of review is one of reasonableness, as to whether the sentence imposed was an abuse of discretion.

Following *Booker*, three subsequent Supreme Court opinions, decided on the same day, have given additional guidance as to the scope of review applicable to both guidelines and non-guidelines sentences. *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Rita v. United States*, 551 U.S. 338 (2007). In *Gall*, the Court held that a sentencing judge "must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." 552 U.S. at 46. The Court rejected, however, "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Id.* at 47. The Court reasoned that if a district court decides to impose a sentence outside the applicable guidelines range, the court must "ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, [a district court judge] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 50.

In defining the standard of appellate review post-*Booker*, the Supreme Court made clear that the courts of appeals retained an important role. In *Rita*, the Court emphasized "[i]n sentencing, as in other areas, district judges at times make mistakes that are substantive. . . . Circuit courts exist to correct such mistakes when they occur." 551 U.S. at 354. However, we must keep in mind that "the clear, overriding import of [*Rita*, *Kimbrough*, and *Gall*] is that appellate courts must respect the role of district courts and stop substituting their judgment for that of those courts on the front line." *United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008).

It is hardly controversial to say that appellate courts have struggled in applying the principles enunciated in *Rita*, *Gall*, and *Kimbrough*. Appellate courts have particularly struggled in review of possession of child pornography cases, where

variances occur in 60% of cases according to the Sentencing Commission's 2010 Sourcebook of Federal Sentencing Statistics.[1]

Regardless of whether the sentence imposed is inside or outside of the guidelines range, an appellate court must use an abuse-of-discretion standard to assess whether a sentence is reasonable. *Gall*, 552 U.S. at 51. As explained in *Rita*, a presumption of reasonableness applies to a sentence within the guidelines; no such presumption applies to a sentence reflecting a variance from the guidelines. 551 U.S. at 355–56. Here, no presumption of reasonableness applies because the sentence imposed by the district court varied downward to an essentially non-custodial sentence.

If a party fails to object to the sentence below, we review for plain error. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc). For plain error review to apply, a party must have had an opportunity to raise the objection below. *Id.* Here, the government objected to the sentence at the time it was imposed. (R. 25 at 30.) Accordingly, we review the district court's sentence under an abuse-of-discretion standard as to reasonableness, which has both a procedural and substantive component. *Gall*, 552 U.S. at 51.

**A. Procedural Reasonableness**

Initially, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. In particular, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he [or she] has considered the parties'

---

[1] *See* U.S.S.C., 2010 Sourcebook of Federal Sentencing Statistics, Table 28: Sentences Relative to the Guideline Range By Each Primary Sentencing Guideline; § 2G2.2 (Fiscal Year 2010) ("2010 Sourcebook"). In fiscal year 2010, the non-government sponsored below-guideline rate was 44.6%, the government sponsored below-guideline rate was 13.5%, and the above-guideline rate was 2.0%. *Id.* By comparison, for all offenders, the non-government sponsored below-guideline rate was 17.8%, the government sponsored below-guideline rate was 25.4%, and the above-guideline rate was 1.8%. 2010 Sourcebook, Table N: National Comparison of Sentence Imposed and Position Relative to the Guideline Range.

arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356.

The government contends that the district court fashioned its sentence based on three clearly erroneous facts: (1) most importantly, mischaracterizing the conclusions of Dr. Sugrue's psychological report and concluding that Robinson was not a pedophile; (2) mischaracterizing Robinson's criminal intent; and (3) wrongly claiming that the government had not previously prosecuted a collector of child pornography unless the person had a prior rape conviction. The government asserts that these factual errors, which drove the court's sentencing decision, rendered the sentence imposed procedurally unreasonable.

The government first contends that the district court mischaracterized the psychological report. During the sentencing hearing, the district court reviewed the psychological report rendered by Dr. Sugrue and concluded that "the important part of the report is the answer to the first question . . . is he a pedophile or not. And the conclusion was, not." (R. 25 at 26.) The government contends that the district court misconstrued the report because Dr. Sugrue never explicitly stated that Robinson was not a pedophile; rather, the report stated that "[o]n the STATIC-99, Mr. Robinson scored in the low risk category relevant to other adult male sex offenders." (Report at 8.) While the government is correct that Dr. Sugrue's report did not explicitly state that Robinson was not a pedophile, the report is subject to varying interpretations. We cannot say that the district court's reliance on its interpretation of the psychological report rises to the level of being clearly erroneous.

The government next contends that the district court mischaracterized Robinson's criminal intent by stating at the hearing, "most people, yourself included, don't think that by purchasing something online that's available is necessarily a crime. Otherwise, nobody would use their credit cards to do it and nobody would use their home computer to do it." (R. 25 at 15.) We find this argument unavailing. Robinson did not need to know that possession of child pornography was a crime; he only needed

to know that that he was in possession of child pornography. *See* 18 U.S.C. § 2252A(a)(5)(B).

Also unavailing is the government's third contention that the district court attempted to diminish the significance of Robinson's criminal conduct by wrongly claiming that the government had previously only prosecuted possessors of child pornography who had a prior conviction for rape. Specifically, the district court stated, "when [the government] first started bringing these cases, the one thing they had in common with each other, but not with this case, is the person, if they were in their forties, had a prior sexual conviction in state court generally, either statutory rape or straight out rape, what's called CSC 1." (R. 25 at 17.) When put into context, however, the court made this comment when speaking to the dangerousness to the community of these types of offenders. The court was merely remarking that it personally noticed that the first wave of prosecutions for possession of child pornography seemed to involve offenders with prior rape convictions.

Despite the remarks made by the district court and its interpretation of the psychological report, the factual findings on which it based its sentence were not clearly erroneous. In short, we find the sentence imposed to be procedurally reasonable.

**B. Substantive Reasonableness**

We next consider whether Robinson's sentence was substantively reasonable in light of the sentencing factors recited in § 3553(a). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). The government contends that the district court failed to consider several § 3553(a) factors relevant to the crime—including the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment—and instead placed unreasonable weight on factors related to Robinson's likelihood of recidivism and whether he was a pedophile. The

government also contends that the district court did not adequately consider the need to avoid unwarranted sentence disparities among defendants convicted of similar conduct.

The district court granted a 78-month downward variance from the low end of the guidelines range. While we do not use any form of strict proportionality review, *United States v. Bolds*, 511 F.3d 568, 580–81 (6th Cir. 2007), the greater the district court's variance, the more compelling the evidence must be. *See Gall*, 552 U.S. at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one."); *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008) (holding that it is not improper to "require some correlation between the extent of a variance and the justification for it").

In justifying its downward variance, the district court granted leniency based primarily on the characteristics of the offender. The district court placed substantial weight on Robinson's psychological evaluation, interpreting Dr. Sugrue's report to conclude that Robinson was not dangerous and not a pedophile. Relying heavily on that conclusion, the district court judge made the following statements: "[h]e does not render any recidivism factors for future behavior with children," "I'm convinced you're not going to do that again," "[a]nd, therefore, I am comfortable in varying to the degree that I'm varying." (R. 25 at 23, 25, 31.)

While the district court thoroughly considered the "history and characteristics of the defendant[,]" *see* § 3553(a)(1), and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant[,]" *see* § 3553(a)(2)(C), the sentence imposed must do more. The sentence was based, in large part, on a prediction of future conduct concerning a particular type of crime that was not at issue in this case. The crime of conviction in this case was possession of child pornography, not sexual abuse of a child.

The district court also emphasized Robinson's employment history, age, and debilitating back condition. Although the guidelines discourage consideration of these factors, *Booker* renders the guidelines advisory. *See* U.S. Sentencing Guidelines Manual §§ 5H1.1, 5H1.4, 5H1.5 (2011). Thus, while a district court may consider such factors

in deciding whether a variance is warranted and in determining the extent of any variance, it should take into account "the 'discouraged' status of these factors." *United States v. Borho*, 485 F.3d 904, 913 (6th Cir. 2007).

The district court also may not disregard the other § 3553(a) factors.  The §3553(a) factors also require the district court to consider "the need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,]" *see* § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct[,]" *see* § 3553(a)(2)(B), and "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[,]" *see* § 3553(a)(6).  The lack of weight given to these other factors renders the sentence in this case substantively unreasonable.

## 1. Seriousness of the Offense

Prominent among the § 3553(a) factors is the "need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  In this case, the offense is knowing possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

The sentence does not reflect the seriousness of this offense.  Child pornography is, without qualification, a serious crime.  Robinson's specific conduct in possessing over 7100 images of child pornography was unquestionably serious.  Some of the images involved the bondage, torture, and rape of prepubescent children.  Further, Robinson did not just possess images—he subscribed to a child pornography website and paid a fee for images.[2]  The guidelines range reflected all of these considerations by adding thirteen points to Robinson's guidelines score.  The district court did not address the enhancements which were applied in computing the guidelines range.  Nor did it explain

---

[2]The fact that Robinson paid money to a website could have justified a charge of receiving child pornography under 18 U.S.C. § 2252A(a)(2).  This section defines distribution or receipt of child pornography as the same crime and imposes a mandatory five-year minimum sentence.  In many cases, the distinction between possessing child pornography (which carries no mandatory minimum) and receiving child pornography (which carries the five-year mandatory minimum) is nonexistent.  But paying a service for providing child pornography is qualitatively different than file sharing.  We note that standing alone, the current statutory scheme makes no principled distinction between possessing and receiving child pornography, which can often times be virtually identical conduct, but nonetheless results in vastly different mandatory sentencing ranges.

why Robinson's lack of a significant criminal record justified a major variance from the sentence recommended by the guidelines.

The district court also stated that "everyone would agree that especially if you're an organizer and a creator of this kind of material, a very severe sentence is warranted," and "the most time [i.e., severe sentences] should go to the creators; the next most time to the distributors and/or possessors who may be prone to commit sexual offenses against children." (R. 25 at 18, 22.) We do not disagree with these statements. However, "[t]hat the producers of child pornography are more culpable . . . does not mean that its knowing and deliberate possessors are barely culpable at all." *United States v. Bistline*, 665 F.3d 758, 765 (6th Cir. 2012). Robinson knowingly acquired the images affirmatively, deliberately, and repeatedly, hundreds of times over the course of five years.

The district court's sentence, however, did not adequately reflect that fact. Nor did the sentence itself reflect the seriousness of his crime, promote respect for the law, or provide just punishment for his offense.

**2. Deterrence**

Another § 3553(a) factor is "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct[.]" 18 U.S.C. § 3553(a)(2)(B). The district court thought that factor was satisfied here because "this is a sex offense . . . [making it] necessary for [Robinson] to register as a sex offender, which, by the way, is another element of deterrence both for you and for everybody else. Nobody wants to be on a list like that." (R. 25 at 29.) The district court also noted that "[t]o the limited extent that anyone knows about [Robinson's] arrest, that's deterrence"; and "the fact that [Robinson was] caught and that gets out into the community, that will deter some other people"; and "sometimes the Government issues a press release . . . [a]nd three or 400 more people may read it or a thousand people, and some of those people might not do that conduct because they know . . . it's a felony conviction"; and "nothing I say here today will take out the fact that for the rest of your life – you're 43 years old – you have a

felony conviction: And that will deter people. And it will especially deter you." (R. 25 at 15.)

However, these consequences do not arise from Robinson's sentence. Rather, they arise from his prosecution and conviction. Section 3553(a)(2)(B) plainly states that "the *sentence* imposed" should "afford adequate deterrence to criminal conduct" (emphasis added). This is not reflected in Robinson's sentence. We have previously held that, under § 3553(a)(2)(B) and (C), deterring future criminal behavior and protecting the public as sentencing factors in a child pornography case should be focused upon the market for such activities. The emphasis should be upon deterring the production, distribution, receipt, or possession of child pornography, and not a prediction of future sexual contact with children. *See United States v. Christman*, 607 F.3d 1110, 1122–23 (6th Cir. 2010). General deterrence is crucial in the child pornography context, as the Seventh Circuit has explained:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded . . . . The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) (citations omitted); *see also United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("[D]eterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing, but in fact received not a word from the District Court.").

Robinson's sentence, which was devoid of any significant period of incarceration, home confinement, or substantial fine, undermines the purpose of general deterrence. As deterrence has both an individualized and more general component, particularly in the child pornography context, we do not see how Robinson's sentence would meaningfully deter anyone else.

**3. Sentence Disparities**

Another factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6). The sentencing guidelines already take into consideration Robinson's lack of significant criminal history and specific conduct in violating 18 U.S.C. § 2252A(a)(5)(B). Yet his guidelines range was 78 to 97 months' imprisonment. As we articulated in *Bistline*, "[w]e do not mean to imply that only a sentence in or around that range will avoid disparities with other similar defendants. But we do not see how the sentence imposed here avoids them." 665 F.3d at 767.

At the sentencing hearing, the district court discussed several cases in which the Sixth Circuit affirmed sentences in child pornography cases that significantly varied from the guidelines. (R. 25 at 18–23.) The court noted that the cases involved "distinguishing characteristics as to each individual" and the decisions were "distinguishable because the individual[s] involved [were] much more active in either creating or distributing the material." (R. 25 at 16, 21.) However, as we have stated before:

> [It] is not logical to justify a more lenient sentence on the basis that [the defendant] did not make or distribute child pornography or molest a child. Just as the federal sentencing laws impose greater sentences upon sellers of controlled substances than upon those who are caught possessing such substances . . . the federal child sexual offense laws do so as well. Indeed, the Sentencing Guidelines take into account only the criminal conduct of which [the defendant] was charged.

*United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010).

We note that the sentencing guidelines relating to child pornography have generated much controversy and are currently under review by the Sentencing Commission. This case is grimly typical in a number of aspects which enhanced the offense level under the guidelines. Robinson was assessed two extra levels for use of a computer, which now occurs in almost every case. Enhancements to the base offense level are meant to increase a sentence for conduct more aggravated than the typical type

of offense, making this guideline an anomaly. In Robinson's case, he was assessed six additional levels because the visual conduct included depictions of prepubescent children being subjected to rape and sadomasochistic or violent conduct. These enhancements have received far less criticism than that of using a computer.

Perhaps the most criticized enhancement involves the number of child pornography images possessed by a defendant. In this case, Robinson was assessed five levels because the offense involved more than 600 images. In a number of offense guidelines, amounts involved in criminal conduct are used to adjust the guidelines range by adding points to the base offense level; *e.g.*, drug quantities in § 2D1.1, amount of loss in § 2B1.1; number of firearms in § 2K2.1. *See* U.S. Sentencing Guidelines Manual §§ 2D1.1, 2B1.1, 2K2.1 (2011). In many cases, the extent and degree of criminal conduct bears a relationship to such quantifiable measurements.[3]

In the computer age, we have some doubt that the number of pictures alone captures the gravity of the crime of possession of child pornography. A defendant who knowingly shares files containing child pornography does not necessarily know the number to be received. A saver of files, who has viewed and traded as many images as a non-saver of files, is subjected to a far greater sentencing guidelines range.

These issues bear upon the facts in this case. While this Court is not tasked with crafting sentencing guidelines or randomly critiquing the work of the Sentencing Commission, it is noteworthy that Robinson acquired a large number of images of child pornography over a five-year period. This fact seems much more appropriate to a sentencing enhancement under the guidelines than a large number of images, all of which could have been downloaded on a single day. Robinson paid money for some of the images and engaged in the criminal conduct over a long period of time, all of which are factors to be considered at sentencing. In sum, while aspects of the sentencing guidelines for child pornography have generated substantial controversy, two

---

[3]In many cases, the opposite may be true. In the case of a low level drug carrier who cannot access the trunk where the drugs are located, the quantity of drugs is not indicative of the gravity of the defendant's conduct. In many fraud cases, the amount of fraud depends upon fortuity, length of operation, or amount available. In other words, more would have been taken in some cases; in others, much smaller in scope, good or bad fortune drove the amount.

enhancements particular to this case make the conduct of the defendant more aggravating.

We pause to explain why our decision in this case is not controlled by our decisions in *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) and *United States v. Prisel*, 316 F. App'x. 377 (6th Cir. 2008), where we considered whether one-day sentences of imprisonment for possession of child pornography were substantively reasonable. In both cases, we affirmed the sentences under the more stringent plain-error standard of review. The sentences imposed in those cases, however, were more severe than Robinson's sentence. The sentences in *Stall* and *Prisel* imposed very restrictive conditions as part of the defendants' supervised release, as well as significant fines. *See Stall*, 581 F.3d at 281 (affirming, under plain-error review, sentence of one day of imprisonment, ten years of supervised release, the first year of which was under home confinement, and $5,000 fine for possession of eighteen images of child pornography, where applicable guidelines range was 57 to 71 months); *Prisel*, 316 F. App'x. at 380 (affirming, under plain-error review, sentence of one day of imprisonment, three years of supervised release, the first eighteen months of which were under home confinement with electronic monitoring, and a $6,000 fine for possession of 1,189 images and five digital movies containing child pornography, where applicable guidelines range was 27 to 33 months). Unlike the facts in *Stall*, here, the district court did not conduct an "extensive analysis of how a [five-year] term of supervised release would restrict [the defendant's] freedom and protect the public" or explain "why the district court believed this sentence will deter similar offenders and why this case warranted a variance." 581 F.3d at 287.

Although the courts in *Stall* and *Prisel* rejected the applicable guidelines ranges, they nevertheless sentenced the defendants to lengthy periods of supervised release—periods of which required home confinement—and substantial fines. Robinson's sentence of one day of imprisonment followed by a five-year term of supervised release under a recommended guidelines range of 78 to 97 months'

imprisonment for possessing 7100 images of child pornography does not begin to approach the severity of the sentences imposed in *Stall* or *Prisel*.

Ultimately, the factors that the district court relied on, as articulated in the record, do not justify a variance of this size. Accordingly, we find the variance here to be substantively unreasonable based on the current record. "[W]e recognize that our substantive review of sentences is deferential . . . [e]ven so, the sentence in this case can withstand review only if deference amounts to abdication[.]" *United States v. Irey*, 612 F.3d 1160, 1165 (11th Cir. 2010) (en banc).

### III. CONCLUSION

We express no view as to an appropriate sentence upon remand to the district court. Fashioning an appropriate sentence is a most difficult task, particularly in a child pornography case. We recognize that in some cases there can be very different circumstances for which *Booker* now compels the district court judge to decide what the appropriate sentence may be. The crime of possessing child pornography is difficult to understand; some cases involve defendants with their own history of sexual abuse as a child, *see United States v. Fink*, 502 F.3d 585, 587–88 (6th Cir. 2007); others involve defendants with serious mental illness, *see United States  v. Brooks*, 628 F.3d 791, 794–98 (6th Cir. 2011). To paraphrase *Gall*, extraordinary circumstances may justify extraordinary variances or departures. 552 U.S. at 50. No such circumstances were identified by the district court as it imposed the sentence. We leave it to the district court to review all of the relevant facts and § 3553(a) factors to re-craft an appropriate sentence.

For the reasons discussed above, we **VACATE** Robinson's sentence and **REMAND** for resentencing in accordance with this opinion.