NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0413n.06

No. 18-3215

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| DARYL JONES, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

FILED
Aug 08, 2019
DEBORAH S. HUNT, Clerk

BEFORE: **BATCHELDER, McKEAGUE, and NALBANDIAN, Circuit Judges.**

**ALICE M. BATCHELDER**, **Circuit Judge.** For over eight months, Daryl Jones drove two hundred miles twice a week from Ravenna, Ohio, to Detroit, Michigan, to buy heroin from a supplier and bring it back to Ohio for distribution. Jones was indicted in a multi-count indictment and pled guilty, ultimately receiving a sentence of 137 months. On appeal, Jones claims that (1) the district court improperly calculated the amount of heroin he brought from Detroit to Ohio and (2) his sentence is procedurally and substantively unreasonable. Because Jones is not able to show the district court committed clear error in its drug amount calculation and because the district court did not abuse its discretion in sentencing Jones to 137 months, we **AFFIRM** Jones's sentence.

**I.**

In late 2015, officers began scrutinizing the Antonio Liddell drug trafficking organization. The members of the organization included Daryl Jones, Antonio Liddell, and Brook Brooks. A wiretap and information from confidential informants revealed that Jones received heroin from a supplier in Detroit and gave the heroin to Brook Brooks, Antonio Liddell, and others for distribution in the Ravenna, Ohio, area. Although officers kept Jones under surveillance, they did not arrest him. About a year later, in September 2016, investigators brought Jones in and interviewed him regarding a separate case. Jones told the investigators that he had last traveled to Detroit to purchase heroin six to eight months earlier. He had not traveled to Detroit more recently because he could no longer reach his contacts. He told investigators that each time he had traveled to Detroit in the past, which he did twice a week for eight to ten months, he picked up ten to fifteen grams of heroin.

In July 2017, Jones was charged in a multi-count indictment for his role in the Antonio Liddell drug trafficking organization. Jones was charged with conspiring to possess with the intent to distribute and to distribute heroin (a Schedule I controlled substance) in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). He was charged also with 15 counts of using a telephone to facilitate drug trafficking in violation of 21 U.S.C. §§ 841(a)(1), 846, 843(b), and 18 U.S.C. § 2; possessing heroin with an intent to distribute it in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C), and 18 U.S.C. § 2; and interstate travel to facilitate drug trafficking in violation 18 U.S.C. § 1952(a)(3). Jones's co-defendants, Brooks and Liddell, were similarly charged. Jones entered a guilty plea to all eighteen counts. There was no plea agreement, but Jones did reserve his right to contest the amount of drugs for which he was responsible. The judge accepted his plea. Following the plea hearing, the probation officer preparing the Presentence Investigation Report

used Jones's admissions regarding the number of trips he took to Detroit to find him "responsible for at least 700 grams of heroin."[1] Jones's base offense level was 28, and with an adjustment for acceptance of responsibility, his final offense level was 25. Jones's long criminal history gave him a total criminal history score of 33, well above the score of 13 necessary to give Jones a criminal history category of VI. The guideline imprisonment range was 110 to 137 months.

At the sentencing hearing, Jones's attorney objected to the amount of heroin attributed to Jones, arguing that "the government came to their conclusion that the defendant was responsible for 700 grams of heroin as a result of an interview that he participated [in] some six months after the conclusion of the conspiracy." Specifically, the figure was based on Jones's statement during the September 2016 interview that he went to Detroit two times per week for eight to ten months and obtained ten to fifteen grams of heroin on each trip. The attorney contrasted this statement with the government's wiretap evidence, which showed evidence of only five trips to Detroit during that period. Given the disparity between the wiretap evidence and Jones's admission in the interview, and noting that the interview occurred "before the defendant was aware he was going to be charged" in the instant case because he "had been arrested on other charges" at the time of the interview, the attorney argued that there was "reason to believe that the statement given by the defendant [in the interview] is not accurate." The attorney pointed out that Jones's co-defendants had claimed responsibility for only 80 grams and 100 grams in their plea agreements.

---

[1] Jones objected to the amount of heroin the presentence report attributed to him. In an addendum to the report, the probation officer wrote the following:

> The defendant . . . argues that the overt acts and wiretap intercepts do not lead to the conclusion that 700 grams of heroin could be attributed to him. There is a wide disparity between the amount attributed to him and the amounts attributed to each of his codefendants. He believes he should be attributed the same amount as his codefendants. The defendant also argues that a variance should be identified because of the defendant's history of substance abuse and mental health issues.

In response, the government called Detective Centa from the Portage County Drug Task Force, who had conducted the interview with Jones in September 2016. Detective Centa confirmed the government's version of the interview. The government then pointed out that based on the number of trips involved, the amount of heroin Jones said he purchased on each trip, and the length of time over which Jones was making the trips, the amount of heroin he was responsible for could be anywhere from 640 to 1,200 grams. The government argued that the amount of 700 grams was a conservative estimate by the probation officer who prepared the presentence report. The government additionally argued that the court was permitted to consider events that occurred beyond the date range in the indictment, so the fact that some of the trips that Jones talked about fell outside the dates of the indictment did not matter.

The court agreed with the government, stating that "700 grams is probably conservative" and that the "best evidence of what the defendant did" is "[h]is own statement." Before announcing the sentence, the court asked Jones if the statement he had made in the September 2016 interview regarding the trips to Detroit was accurate. Mr. Jones responded, "Yeah, they true." The court then granted Jones a three-level reduction in the offense level for acceptance of responsibility, even though it did so "reluctantly" because Jones's attorney's argument regarding the amount of drugs he was responsible for appeared antithetical to acceptance of responsibility. The court addressed the 18 U.S.C. § 3553(a) factors and sentenced Jones to 137 months imprisonment. Mr. Jones appeals this sentence, arguing the district court improperly calculated the amount of drugs he was responsible for and that his sentence is procedurally and substantively unreasonable.

**II.**

We review the district court's drug quantity finding for clear error. *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004). "A factual finding is clearly erroneous when a court, on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Seymour*, 739 F.3d 923, 928 (6th Cir. 2014) (quoting *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009)). When "'the exact amount of drugs involved is uncertain, the court may make an estimate supported by competent evidence, but the evidence' supporting the estimate 'must have a minimal level of reliability beyond mere allegation, and the court should err on the side of caution in making its estimate.'" *Sandridge*, 385 F.3d at 1037 (quoting *United States v. Owusu*, 199 F.3d 329, 338 (6th Cir.2000)); *see also United States v. Gill*, 348 F.3d 147, 151 (6th Cir. 2003) (stating that "the district court's findings must be supported by a preponderance of the evidence").

In sentencing, the district court is not limited to drug trafficking activity that occurs within the time period specified in the indictment. *See* U.S.S.G. § 2D1.1, cmt. n.5 (2018) ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level.") The Guidelines permit all "relevant conduct" to be considered by the court. The procedure for determining what qualifies as "relevant conduct" is laid out in the Guidelines in § 1B1.3. With regard to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," relevant conduct includes "all acts and omissions . . . that were *part of the same course of conduct or common scheme or plan* as the offense of conviction." *Id.* § 1B1.3(a)(2) (emphasis added). Because the crime of drug trafficking is listed in § 3D1.2(d), the definition of "relevant conduct" in § 1B1.3(a)(2) applies to the instant case.

Jones makes several arguments regarding why the drug trafficking he admitted to in his September 2016 interview should not be considered "relevant conduct." First, he argues that he was not given "any notice" that "his statements [in his September 2016 interview] would later be used" against him. But Detective Centa testified that Jones was in jail at the time he was interviewed, Detective Centa interviewed him with a DEA agent present, Jones was told he was under a federal investigation, and before the interview began Detective Centa read Jones his Miranda rights and Jones acknowledged his rights and agreed to speak about his drug trafficking activity. Under these circumstances, we are not persuaded Jones was unaware that any information he gave to Detective Centa could be used against him at a later point.

Jones next argues that there is not "any evidence that [his] responses [to Detective Centa's questions] were made with any thought or attention to detail." But Detective Centa testified that Jones's statements regarding his trips to Detroit were consistent with what the investigating team observed in the telephone intercepts and in its surveillance. Additionally, during the sentencing hearing Jones confirmed what he told Detective Centa was accurate.

Finally, Jones argues that if his statement to Detective Centa was reliable, it "would have been charged in the July 2017 indictment and used against *all* the conspirators." But Jones never explicitly stated that every time he went to Detroit he did so as a part of his participation in the Antonio Liddell drug trafficking organization. There is no reason his statement to Detective Centa would have been used against his co-defendants when it did not specifically implicate them.

Sixth Circuit precedent establishes that the "relevant conduct" in the instant case can include all of Jones's trips to Detroit. In *United States v. Miller*, the defendant "challenge[d] the district court's inclusion of drug sales outside the period of the conspiracy as relevant conduct." 910 F.2d 1321, 1322 (6th Cir. 1990). Although the defendant had pled guilty only to conspiring

to distribute 35.5 grams of cocaine between March and May of 1988, in a meeting with his probation officer who was preparing the presentence report, the defendant "revealed that he had purchased approximately one ounce of cocaine per week between February 1987 and October 1988." *Id.* at 1322–23. The probation officer "calculated that the defendant sold 1,169.5 grams of cocaine over a 20-month period," a calculation which had a "substantial" effect on the guideline range in the presentence report. *Id.* at 1322. Noting that the Guidelines "require[] consideration of uncharged relevant conduct" and that "whether uncharged drugs are part of a common scheme or plan is a factual finding we will disturb only if clearly erroneous," the court found "no justification for modifying the defendant's sentence," and affirmed the district court. *Id.* at 1327 (quotation omitted).

We find no error in the district court's determination that Jones's trips to Detroit were part of one course of conduct.

### III.

We review for abuse of discretion the procedural reasonableness of a sentence. *Gall v. United States*, 552 U.S. 38, 56 (2007). In instances where the defendant did not raise the issue below, we review the district court's determination under a plain error standard. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008). This requires the defendant to show: "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 386 (quotations omitted).

As an initial matter, we note that in determining whether a district court's sentence is procedurally reasonable, a reviewing court "must . . . ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines

range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. As established in Part II *supra*, the district court did not improperly calculate the Guidelines range or base the sentence on clearly erroneous facts. There is no indication the district court treated the Guidelines as mandatory. Finally, the district court discussed each of the § 3553(a) factors, addressed each of Jones's arguments for a lower sentence, and explained why it gave Jones a sentence at the top of the Guidelines range.

We are left with Jones's specific arguments that the district court erred, arguments Jones did not raise in the district court. First, Jones argues that the disparity between his sentence and the sentence of his co-defendants is indicative of procedural unreasonableness. In contrast to the 137 months Jones received, Liddell was sentenced to 60 months and Brooks to 33 months. Jones quotes *United States v. Gapinski*, which says that if a defendant has raised a particular nonfrivolous argument in seeking a lower sentence then "the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.'" 561 F.3d 467, 474 (6th Cir. 2009) (quotation omitted). Jones argues the district court "disregarded these rules and failed to meaningfully address the striking disparity between Jones, on the one hand, and Liddell and Brooks, on the other." But Jones never made this argument at the district court level, and the district court was under no obligation to address it on its own. Jones did argue in his Sentencing Memorandum that his "relevant conduct should be no more than that of his co-defendants." He stated also during the sentencing hearing that the court should use the same drug quantity for calculating his sentence as it did for his co-defendants. But Jones never argued that failing to do so would lead to a sentencing disparity that would be procedurally unreasonable. This is a new argument on appeal that we review for plain error.

Jones's argument fails under the plain error standard because the judge committed no error in declining to address explicitly the disparity between Jones's sentence and his co-defendants' sentences. True, 18 U.S.C. § 3553(a)(6) requires a district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." But § 3553(a)(6) "is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct. It is not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants."[2] *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) (citations omitted). Because "the Guidelines themselves represent the best indication of national sentencing practices," and because Jones's sentence was within the Guidelines range, the district court did not violate § 3553(a)(6). *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008).

Jones argues also that the district court committed procedural error when it threatened to withdraw the reduction in his offense level for acceptance of responsibility because he contested the amount of heroin for which he was responsible. Jones states he was threatened by the judge and this was unreasonable given that he had, in his plea, specifically reserved the right to contest how much of the heroin was his responsibility. We reject this argument first for the simple reason that the district court did grant Jones a three-level reduction—the maximum reduction available— for his acceptance of responsibility and our review of the sentencing transcript shows no untoward animosity, bullying, or threatening by the judge. But additionally, Jones made no objection along these lines in the district court, and we have stated previously that a defendant can be denied a

---

[2] Additionally, even if § 3553(a)(6) were relevant to Jones and his co-defendants, Jones is not similarly situated to them because Brooks and Liddell did not make statements implicating themselves in nearly the amount of heroin trafficking that Jones did.

reduction in offense level for acceptance of responsibility by disputing the extent of his involvement in the criminal conduct. *See, e.g., United States v. Reed,* 788 F.3d 231, 234 (6th Cir. 2015) (stating that the "court could . . . find the reduction unwarranted if [Defendant] attempted to minimize his role in an offense after conviction") (quotation omitted). The district court's actions were consistent with our precedent and did not constitute plain error.

## IV.

For a sentence to be substantively reasonable, "it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient, but not greater than necessary, to comply with the purposes" set out in § 3553(a). *United States v. Ronald Smith*, 505 F.3d 463, 470 (6th Cir. 2007) (quotations omitted). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Robinson*, 669 F.3d 767, 774 (6th Cir. 2012) (citations omitted). We review a sentence for substantive reasonableness under an abuse of discretion standard. *Gall*, 552 U.S. at 51 (2007).

Jones makes several arguments that his sentence is substantively unreasonable. First, he argues that "[i]t was arbitrary, and unduly reliant on Jones's one interview and criminal history, to impose uniquely on him a sentence for a much different, and more expansive conspiracy, than the one to which he and his co-defendants had all pleaded guilty." But Jones's co-defendants did not admit to trafficking in as much heroin as Jones did, and Jones pleaded guilty knowing the final amount of heroin was in dispute. Moreover, even after learning at his sentencing hearing that he was being charged with trafficking 700 grams of heroin, Jones did not dispute that that number was correct.

Second, Jones argues that his "criminal history [was] already counted once when his Guideline range [was] scored under Category VI" and therefore it is "arbitrary and unreasonable to count it against him again by ratcheting up his drug quantity amount." We construe this to be another way of saying that it is unfair to hold Jones responsible for 700 grams of heroin despite his own admission to that fact. We addressed this argument above, and if Jones means to argue something different, he failed to develop it and therefore forfeited it. *United States v. Kerley*, 784 F.3d 327, 340 (6th Cir. 2015) ("[Defendant] briefly raises the argument, but fails to develop it in any meaningful way. Therefore, we need not consider the issue because [Defendant] has forfeited it.")

Finally, Jones argues that the district court improperly weighed the § 3553(a) factors and did not properly weigh Jones's mental health and substance abuse problems. We disagree. Regarding the § 3553(a) factors, the district court discussed each one in depth, we see no error in its reasoning (nor does Jones identify one), and we give the district court's decision regarding the factors "due deference." *Gall*, 552 U.S. at 51. We will not disturb its decision here. Regarding Jones's mental health and substance abuse, the district court acknowledged these issues and discussed them at length, but ultimately determined that "the protection of the community and reflecting the seriousness of the offense outweighs the need for a [downward] variance." Within-Guidelines sentences have a rebuttable presumption of reasonableness, and Jones has done nothing to rebut this presumption, especially in light of the district court's careful balancing of Jones's particular situation and the need to protect the community. *Gall*, 552 U.S. at 51 (2007). We therefore find that Jones's sentence is substantively reasonable.

## V.

For the foregoing reasons, we **AFFIRM** the district court's judgment.