**NOT RECOMMENDED FOR PUBLICATION**
File Name: 15a0628n.06

No. 14-4290

FILED
Sep 09, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| GERARDO PEREZ-MENDOZA, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE:** GUY, KETHLEDGE, and STRANCH, Circuit Judges.

**STRANCH, Circuit Judge.** Gerardo Perez-Mendoza challenges on appeal the procedural and substantive reasonableness of his guidelines sentence for drug trafficking convictions. He contends that the district court erred by imposing two sentencing enhancements and by declining to apply the safety valve provision. He also argues that the district court did not give adequate consideration to his immigration status when balancing the sentencing factors listed in 18 U.S.C. § 3553(a). Because we conclude that the sentence is procedurally and substantively reasonable, we AFFIRM the judgment of the district court.

**I. BACKGROUND**

Perez-Mendoza pled guilty without a plea agreement to five counts of a six-count superseding indictment charging him with various drug trafficking crimes. The first three counts of the superseding indictment related to Perez-Mendoza's distribution of illegal drugs on three

occasions in 2010. These three counts were included in the original indictment issued on November 20, 2013. Upon the return of that indictment, the district court issued a warrant for the arrest of Perez-Mendoza, and federal agents took him into custody on November 22, 2013. After execution of the arrest warrant, agents uncovered new evidence of illegal narcotics activity, which led the grand jury to issue a superseding indictment charging additional drug trafficking crimes. Perez-Mendoza's son, Miguel Perez-Lopez, pled guilty under a plea agreement to two counts of the superseding indictment in which he was named as a defendant.

During a guilty plea hearing, Perez-Mendoza admitted the facts underlying his offenses as they were stated by the government attorney. As charged in Count 1 of the superseding indictment, Perez-Mendoza admitted that, on or about January 25, 2010, at the Belden Village Mall parking lot in North Canton, Ohio, he distributed 503 grams of cocaine to an undercover agent and a cooperating witness in return for $13,500. As charged in Count 2, Perez-Mendoza admitted that, on or about February 3, 2010, at a restaurant in Massillon, Ohio, he distributed 27.1 grams (or 25.9 grams actual) of methamphetamine to an undercover agent and a cooperating witness in return for $2,000.

With respect to Count 3, Perez-Mendoza admitted that, on or about May 7, 2010, at a trailer park in Orrville, Ohio, he distributed 138.9 grams (94.6 grams actual) of methamphetamine to a cooperating witness in exchange for $10,000. Although Count 3 charged Perez-Mendoza with violating 21 U.S.C. § 841(b)(1)(A), which requires a ten-year mandatory minimum sentence upon conviction, the government attorney informed the court that, pursuant to a recently-announced Department of Justice initiative, the government was satisfied with the lower statutory minimum penalty of five years found in 21 U.S.C. § 841(b)(1)(B). The government's concession, accepted by the district court at sentencing, allowed the court to

sentence Perez-Mendoza below the statutory minimum penalty of § 841(a)(1)(A) as charged in Count 3.[1]

Count 4 of the superseding indictment charged that, on November 22, 2013, Perez-Mendoza knowingly and intentionally possessed 500 grams or more of cocaine with the intent to distribute. Count 6 charged that, on the same date, Perez-Mendoza and Perez-Lopez aided and abetted each other in the knowing and intentional possession of 50 kilograms of marijuana with the intent to distribute. Perez-Lopez alone was charged in Count 5 with aiding and abetting the knowing and intentional possession of less than 500 grams of cocaine with intent to distribute on November 22, 2013. The superseding indictment also included a forfeiture count.

During the plea colloquy, Perez-Mendoza admitted with regard to Counts 4 and 6 that agents arrested him on a federal arrest warrant at 8:20 a.m. on November 22, 2013, in Orrville, Ohio, shortly after he had left his residence on Goudy Road in Dalton, Ohio. He further admitted the government could prove that, shortly after his arrest, agents who were conducting surveillance at Perez-Mendoza's residence on Goudy Road saw a dark blue Honda arrive at the house traveling at a high rate of speed. The male driver jumped out of the car, entered the house, and emerged a few minutes later carrying a dark trash bag, which he placed on the passenger side of the Honda. The male returned to the residence and came out a minute later carrying a blue and white cooler and a plastic tote container, which he placed in the Honda's trunk. The male then got in the car and drove away.

---

[1]The parties' agreement to the defendant's guilt of a lesser-included drug offense is similar to a jury finding that a defendant is responsible for a lesser-included drug quantity specified in 21 U.S.C. § 841(b)(1)(B), although the indictment charged a greater statutory penalty under § 841(b)(1)(A) based on a higher drug quantity. *See United States v. Martinez*, 430 F.3d 317, 339–40 (6th Cir. 2005). In that situation, "neither a prejudicial variance from, nor a constructive amendment to the indictment" results. *Id.* at 340. We observe, however, that the government could have proceeded by information and waiver of indictment on Count 3 to avoid any confusion about Perez-Mendoza's guilty plea and sentencing. *See* Fed. R. Crim. P. 7(b).

Agents followed the Honda to a commercial establishment five to six miles away from the Goudy Road residence. Officers approached the car and identified the driver as Perez-Lopez, the 18-year old son of Perez-Mendoza. After a short conversation, Perez-Lopez consented to a search of the vehicle. A narcotics canine circled the car and alerted to the odor of narcotics. The search revealed that the black trash bag contained a loaded AKMS 7.62 caliber rifle (better known as an AK-47) and a thermos containing nine ounces of cocaine. The cooler located in the trunk contained twenty pounds of marijuana packaged in one-pound quantities. The plastic tote contained another five to seven pounds of marijuana in vacuum-sealed bags, marijuana residue, and a loaded Colt .22 caliber handgun. Perez-Lopez claimed that the drugs and loaded firearms were his.

Officers then returned to Goudy Road and searched Perez-Mendoza's residence. Agents located twelve ounces of cocaine cutting agent inside a thermos, ammunition suitable for the two firearms seized from Perez-Lopez, and $14,775 in currency. Perez-Mendoza admitted that the quantities of illegal drugs seized from Perez-Lopez were indicative of narcotics trafficking and not personal use.

The presentence report (PSR) applied the 2013 version of the Guidelines Manual, grouped the offenses, and set the base offense level at 32 based on a total drug quantity equivalency of 2,639.4 kilograms of marijuana. PSR ¶¶ 17–19. The probation officer added two levels for the possession of a dangerous weapon under USSG § 2D1.1(b)(1), PSR ¶ 20, and added two more levels under USSG § 3B1.1(c) for Perez-Mendoza's aggravating role in supervising his son in criminal activity, PSR ¶ 22, bringing the adjusted offense level to 36. With a three-level reduction for acceptance of responsibility, the total offense level was 33. PSR ¶¶ 26–28. Perez-Mendoza had one criminal history point, placing him in criminal history

category I.    PSR ¶¶ 30–31.    His advisory guideline range was 135 to 168 months of imprisonment.  PSR ¶ 47.  Perez-Mendoza objected to both sentencing enhancements, requested application of the safety valve provision, and asked the district court to consider the consequences of his status as an undocumented, deportable immigrant.

By the time of sentencing, the November 2014 version of the Guidelines Manual was in effect, and USSG § 2D1.1 required lower base offense levels for certain drug trafficking offenses.  Accordingly, the district court lowered Perez-Mendoza's base offense level from 32 to 30.  The court overruled his objections to the two sentencing enhancements and found the safety valve provisions of USSG § 2D1.1(b)(17) and USSG § 5C1.2 were not applicable.  These rulings resulted in a total offense level of 31, criminal history category I, and an advisory guideline range of 108 to 135 months of imprisonment.  After considering all of the arguments and information before it and applying the § 3553(a) sentencing factors, the court imposed a sentence of imprisonment of 115 months on Counts 1 through 4 and 60 months on Count 6, all terms to be served concurrently.  Although the court recognized that Perez-Mendoza would be subject to deportation to Mexico after serving his sentence, the court imposed a period of supervised release, waived a fine, and required payment of a special assessment of $500.

Perez-Mendoza filed a timely notice of appeal from the district court's judgment.  We have appellate jurisdiction to consider this sentencing appeal pursuant to 18 U.S.C. § 3742(a).

## II.  STANDARD OF REVIEW

We will set aside a sentence only if we conclude that the district court abused its discretion.  *See Gall v. United States*, 552 U.S. 38, 46 (2007).  Our review requires us to examine both the procedural and substantive reasonableness of the sentence chosen by the court.  *See United States v. Robinson*, 778 F.3d 515, 518 (6th Cir. 2015).  Because the Sentencing

Guidelines are "the starting point and the initial benchmark" for sentencing, *Gall*, 552 U.S. at 49, we review a district court's interpretation of the Sentencing Guidelines *de novo* and its findings of fact for clear error, *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012). We also consider the district court's application of the § 3553(a) sentencing factors in choosing an appropriate sentence. *See Gall*, 552 U.S. at 49–50. The sentence ultimately imposed by the court may be unreasonable if the court committed significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. If the sentence is "procedurally sound," we inquire whether the sentence is substantively reasonable. *See id.* A sentence may be substantively unreasonable if the district court acts arbitrarily in selecting the sentence, considers impermissible factors, fails to take into account the § 3553(a) factors, or gives any pertinent factor an unreasonable amount of weight. *United States v. Griffin*, 530 F.3d 433, 439 (6th Cir. 2008).

## III. ANALYSIS

Perez-Mendoza raises four sentencing issues for our resolution: whether the district court properly enhanced his base offense level for possession of dangerous weapons and for his aggravating role in the offense; whether the court should have applied the safety valve provision; and whether the court adequately considered the consequences of his immigration status in selecting a sentence. Upon analyzing each of these issues, we affirm the sentence.

## A. Weapon enhancement under USSG § 2D1.1(b)(1)

USSG § 2D1.1(b)(1) directs the district court to increase the base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed." The commentary explains that this weapon enhancement is used to reflect "the increased danger of violence when drug traffickers possess weapons." USSG § 2D1.1, comment. (n. 11). The enhancement is applicable "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*

Before a district court may apply this enhancement, the government must show by a preponderance of the evidence that the defendant actually or constructively possessed a dangerous weapon. *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008). Constructive possession can be proved by showing ownership, dominion or control over the firearm itself, or dominion or control over the premises where the firearm was kept. *Id.* Once the government establishes that the defendant possessed a dangerous weapon, a rebuttable presumption arises that the firearm was connected with the offense and that the sentencing enhancement applies. *Id.* The burden then shifts to the defendant to rebut the presumption by showing that it was clearly improbable that the weapon was connected with the crime. *Id.*

The undisputed facts support the district court's finding that Perez-Mendoza constructively possessed the firearms that were removed from his residence on Goudy Road by his son shortly after agents arrested Perez-Mendoza. *See id.* Although Perez-Mendoza initially disputed that he resided at the Goudy Road address, he abandoned that position during the sentencing hearing. Because Perez-Mendoza exercised dominion or control over his residence from which his son removed firearms, cocaine, and marijuana, the district court did not err in finding that Perez-Mendoza constructively possessed the firearms. *See Wheaton*, 517 F.3d at

367 ("Wheaton himself stated that he had lived at 926 Sherwood, an admission that reinforces the conclusion that he had 'dominion over' the house where the gun was found."); *United States v. Sierra-Villegas*, 774 F.3d 1093, 1102 (6th Cir. 2014) (finding the defendant constructively possessed firearms found in the master bedroom of his residence). That Perez-Lopez actually possessed the firearms when the police stopped his car and seized the evidence does not change our analysis because "the law recognizes joint possession." *Wheaton*, 517 F.3d at 367. The district court's finding that Perez-Mendoza constructively possessed the firearms is not clearly erroneous. *See id.*

In light of the court's finding that Perez-Mendoza constructively possessed the firearms, the burden shifted to the defendant to show that "it is clearly improbable that the weapon[s were] connected with the offense." USSG § 2D1.1, comment. (n. 11). Perez-Mendoza did not attempt to make the required showing. Instead, he argued there was no proof that he possessed firearms in relation to the 2010 drug trafficking offenses and that he did not possess a weapon at the time of his arrest. The undisputed facts established, however, that Perez-Mendoza constructively possessed firearms in connection with his 2013 drug trafficking activities as charged in Counts 4 and 6 of the superseding indictment. Having accepted Perez-Mendoza's guilty plea to those two offenses, the district court did not err in applying the two-level sentencing enhancement for possession of dangerous weapons. USSG § 2D1.1(b)(1); *Sierra-Villegas*, 774 F.3d at 1102; *Wheaton*, 517 F.3d at 367.

## B. Aggravated Role in the Offense under USSG § 3B1.1(c)

Perez-Mendoza next argues that the district court should not have imposed a two-level increase for his aggravating role in the offense as the organizer, leader, manager, or supervisor of his 18-year old son, Perez-Lopez. We review the district court's factual findings for clear error

and, due to the fact-bound nature of the decision, we examine deferentially the district court's legal conclusion that a defendant qualifies for an aggravating role enhancement. *United States v. Wright*, 747 F.3d 399, 412 (6th Cir. 2014); *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013). The government must prove by a preponderance of the evidence that the enhancement applies. *See United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003).

The pertinent guideline, USSG § 3B1.1(c), provides that a two-level enhancement is warranted "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than that described in (a) or (b)." Neither (a) nor (b) applies in this case so we will not discuss those provisions. The commentary explains that a defendant may qualify for the two-level enhancement if he was the "organizer, leader, manager, or supervisor of one or more other participants." USSG § 3B1.1(c), comment. (n.2). The enhancement is used "primarily because of concerns about relative responsibility," USSG § 3B1.1(c), comment. (backg'd), and nothing in the language of the guideline provision or its commentary suggests that the enhancement is limited to cases involving charged conspiracies, as Perez-Mendoza argues. By its express terms, § 3B1.1(c) applies "in any criminal activity." In deciding whether a defendant qualifies for an aggravating role enhancement, the district court may consider several factors, including:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

§ 3B1.1(c), comment. (n.4); *Wright*, 747 F.3d at 412.

The district court determined that the two-level enhancement applied because Perez-Mendoza supervised his son in their joint criminal drug activity. The court found that Perez-Lopez participated in his father's drug trafficking activity in 2013 based on his own admissions

when he pled guilty to aiding and abetting his father's criminal conduct and was sentenced by the court to serve 24 months in prison. Perez-Lopez admitted that, within minutes of his father's arrest, he arrived at his father's residence to take custody of incriminating evidence. He removed loaded firearms, cocaine, and marijuana from the house, placed the items in his car, and drove away from the scene. He could not have accomplished this task in such a short period of time if he did not know of the existence and the location of the drugs and guns inside his father's home. Perez-Lopez tried to claim the drugs and guns were his, but in sentencing Perez-Mendoza, the district court would have none of that:

> . . . [Y]our son didn't do this. You know full well that he was trying to help Dad. He did that for which he was convicted at Counts 5 and 6; and you're also convicted of 6. He said those things were his because he believed Dad would get in trouble if he . . . didn't take possession or claim ownership and left it so that it would be known that they were Dad's.
>
> Your son's lack of knowledge that he didn't know to take the [cocaine] cut, maybe he didn't know it was there, could be said he forgot it, but more likely than not, he had no idea that the other thermos contained something that was related to the drug activity.
>
> So I think it's not only what he did, but what he didn't do. . . .
>
> . . . I find that having already sentenced that 18-year-old, he was no mastermind, leader or organizer, he would more likely than not have been doing something entirely different but for having been led by his father. And I think you understand that, sir.
>
> It's my finding, and I don't want you to hold [it] against your son if at some time you're later reunited with him, that I find that you led him in these unlawful activities. You organized how they were to occur, and you were indeed the leader. And the two levels suggested at 3B1.1, subpart (c) . . . are appropriate for those reasons.

R. 52, Page ID 415–16.

The district court's factual findings, based on undisputed facts, are not clearly erroneous. *Wright*, 747 F.3d at 412. The court's decision to apply the two-level enhancement for aggravating role under § 3B1.1(c) was not procedurally unreasonable. *Robinson*, 778 F.3d at 518; *Washington*, 715 F.3d at 983.

## C.  Safety Valve Provisions of USSG § 2D1.1(b)(17) & USSG § 5C1.2

Perez-Mendoza next contends that the district court should have given him the benefit of the safety valve outlined in USSG § 2D1.1(b)(17) and USSG § 5C1.2.  Application of these provisions would have allowed Perez-Mendoza to avoid a minimum sentence.  It was his burden to prove that he satisfied all five requirements to obtain consideration under the safety valve. USSG § 5C1.2; *United States v. Bolka*, 355 F.3d 909, 912 (6th Cir. 2004).

The defendant's possession of loaded firearms and his aggravating role in the offense each independently disqualified him from potential safety valve relief.  USSG § 5C1.2(a)(2) & (4).  Because the district court did not clearly err in determining that Perez-Mendoza was ineligible to receive the benefit of the safety valve provision, *see United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996), the sentence ultimately imposed without the benefit of safety valve relief was not procedurally unreasonable.  *See Gall*, 552 U.S. at 46.

## D.  Immigration Status

Finally, Perez-Mendoza argues that his sentence is procedurally and substantively unreasonable because the district court, in weighing the § 3553(a) factors, failed to give adequate consideration to his "deportation status, strong family ties, age, extreme remorse, strong employment history and the hardships he has had to face in Mexico."  Appellant's Br. at 32.  The defendant outlines his difficult upbringing in poverty with limited education in Mexico and his hard manual labor in this country to support his family, including a wife and five children, four of whom are United States citizens.  *Id.* at 33–35.  He argues that the district court did not fully take into account the hardship he faces as a deportable alien who is ineligible for:  confinement in a minimum-security prison; participation in the RDAP early release program; and placement in a halfway house at the conclusion of the prison term.  *Id.* at 35–36.

Contrary to these arguments, the district court expressly stated that the court had listened attentively to the parties' arguments and had considered the presentence report, the parties' sentencing memoranda, and other documents submitted by defense counsel in mitigation of sentence. When applying the § 3553(a) factors, the court explained at length why it chose to impose a sentence of 115 months of imprisonment, which is slightly higher than the mid-point of the advisory guideline range of 108 to 135 months.

The district court opened its consideration of the § 3553(a) factors with a discussion of Perez-Mendoza's age, strong family ties, and minimal criminal history. The court specifically declined to recommend Perez-Mendoza's participation in the RDAP program because the record did not support a finding that he needed substance abuse treatment. The court characterized the defendant's drug trafficking crimes as "terribly serious" considering the drug quantities involved, and the court lamented Perez-Mendoza's decision to involve his son in drug trafficking, resulting in a felony record and prison sentence for the son. The court recognized that Perez-Mendoza had at least begun to express regret for having involved his son in criminal activity. Noting Perez-Mendoza's lack of education, the court required him to obtain the equivalent of a high school diploma, either while incarcerated or during a period of supervised release if he is not immediately deported upon the completion of his prison sentence. In further applying the § 3553(a) factors, the court considered the need for deterrence and protection of the public, and, after imposing the sentence, recommended that the defendant be placed at a prison facility near his family. The court recognized, however, that the Bureau of Prisons might not fulfill the court's request in light of Perez-Mendoza's immigration status.

This summary of the court's sentencing analysis demonstrates that the court *did* consider various sentencing factors Perez-Mendoza now claims the court ignored. The sentence within

the properly calculated advisory guideline range is entitled to a presumption of reasonableness, *see United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007), and the court did not select the sentence arbitrarily, base the sentence on impermissible factors, fail to consider relevant sentencing factors, or give an unreasonable amount of weight to any one factor, *see United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Accordingly, the sentence was both procedurally and substantively reasonable, and the district court was not required to explain "*why* an alternative sentence was *not* selected," *see United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006).

## IV. CONCLUSION

For all these reasons, we AFFIRM the judgment of the district court.