RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 13-2308

RUFUS ROBINSON,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cr-20091-1—Arthur J. Tarnow, District Judge.

Argued: October 2, 2014

Decided and Filed: February 18, 2015

Before: SILER, CLAY, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Kevin M. Mulcahy, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellant. Kimberly W. Stout, Birmingham, Michigan, for Appellee. **ON BRIEF:** Kevin M. Mulcahy, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellant. Kimberly W. Stout, Birmingham, Michigan, for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge. The government appeals, for the second time, from the non-custodial sentence imposed on Rufus Robinson ("Defendant") for the possession of more than seven thousand images of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Defendant's previous sentence of one day of incarceration and five years of supervised release

was held substantively unreasonable by this Court in *United States v. Robinson*, 669 F.3d 767 (6th Cir. 2012) ("*Robinson I*"). On remand, the district court again sentenced Defendant to one day of incarceration, with credit for time served. The district court also lengthened the period of supervised release and imposed additional conditions of release. The government's second appeal raises the question of whether this second sentence is substantively reasonable.

For the reasons set forth below, we **VACATE** Defendant's sentence and **REMAND** the case for reassignment and resentencing.

## BACKGROUND

Defendant pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) on March 9, 2009, without entering into a plea agreement. His prosecution arose from his paid subscription, in April 2006, to a website that allowed him access to large amounts of child pornography. This website became the subject of a national investigation by the Bureau of Immigration and Customs Enforcement ("ICE"), which gathered credit card information of subscribers to the site. ICE agents identified Defendant through his credit card information and subsequently interviewed him at his home. Defendant provided written consent for the search of his home and examination of his two computers. Defendant also voluntarily turned over to the ICE agents approximately 100 optical discs (CDs and DVDs) containing child pornography.

A forensic examination of Defendant's computers and only fifty of the hundred-or-so discs revealed at least 7,100 images of child pornography. These images included depictions of appalling abuse of children, including child bondage and torture, and the rape of children and infants. One close-up image showed an adult penis anally penetrating a very young female child or infant. Other images showed adults engaging in oral sex with infants. The collection also included images of young girls, unclothed, in sexually explicit poses.

Defendant did not dispute the calculation of an adjusted offense level of twenty-eight under the Sentencing Guidelines, yielding a guidelines range of seventy-eight to ninety-seven months based on his Category I criminal history. Defendant's adjusted offense level reflected a base level of eighteen. Enhancements totaling thirteen levels were applied for material depicting prepubescent juveniles (two levels), material portraying sadomasochistic or violent content (four

levels), the use of the computer (two levels), and the possession of more than six hundred images (five levels). Finally, a reduction by three levels was applied based on Defendant's acceptance of responsibility.

At the first sentencing hearing, the government requested a within-guidelines sentence, noting the serious nature of the crime and emphasizing that Defendant's affirmative purchase of child pornography contributed to the creation or expansion of a market for child pornography. Defense counsel sought lengthy probation, citing the conclusion of a psychologist retained by Defendant that he was neither dangerous nor a pedophile, as well as his cooperation with investigating agents and his attendance at counseling. The district court sentenced Defendant to one day of incarceration, with credit for time served, to be followed by five years of supervised release with enumerated conditions. Due to Defendant's indigent status, no fine was imposed.

This Court vacated that sentence as substantively unreasonable in light of the sentencing factors recited in 18 U.S.C. § 3553(a). Briefly summarized, we first held that the sentence did not "reflect the seriousness of [Defendant's] crime, promote respect for the law, or provide just punishment for his offense." 669 F.3d at 776. In regard to the seriousness of the crime, we emphasized the violent nature of the images Defendant possessed, the youth of the children involved, the enormous volume of Defendant's child pornography collection, and his paid subscription to the child pornography website. Second, we held that the extraordinarily light sentence imposed by the district court "undermine[d] the purpose of general deterrence." *Id.* at 776-77. Third, noting again the facts that made Defendant's crime comparatively serious, we held that the sentence did not adequately reflect the need to avoid "sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* at 777 (quoting § 3553(a)(6)). Ultimately concluding that "the factors that the district court relied on, as articulated in the record, [did] not justify" the sizeable variance from the guidelines range, this Court remanded the case with instructions that the district court resentence Defendant after appropriate consideration of the sentencing factors under § 3553(a). 669 F.3d at 779-80.

We are dismayed to discover that the district court did not heed our instructions. After some delay occasioned by Defendant's petition for writ of *certiorari* to the United States Supreme Court, which was denied, the district court rejected both the government's below-

guidelines request for three years of incarceration and Defendant's own suggestion of a lengthy period of home confinement. Instead, the court re-imposed the sentence of one day of incarceration, lengthened the period of supervised release to ten years, and added several new conditions of release restricting Defendant's potential to interact with minors and requiring him to continue his therapy and medication. As discussed below, the district court's second sentencing decision failed to adequately address the three factors that we previously held were given insufficient weight. Although it is true that the district court was presented with new evidence regarding Defendant's mental health condition and his alleged post-sentence rehabilitation, both of which it could properly take into account under *Pepper v. United States*, 562 U.S. 476 (2011), this mitigating evidence could not overcome the fundamental deficiencies in the district court's reasoning resulting in the district court's sentencing decision.

## DISCUSSION

### I. Standard of Review

We review a criminal sentence imposed by a district court for abuse of discretion. *United States v. Bistline*, 720 F.3d 631, 633 (6th Cir. 2013); *Rita v. U.S.*, 551 U.S. 338, 362 (2007) ("*Booker*[, 543 U.S. 220 (2005)] replaced the *de novo* standard of review required by 18 U.S.C. § 3742(e) with an abuse-of-discretion standard that we called 'reasonableness' review.") (Stevens, J., concurring). Sentences are reviewed for procedural as well as substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). The present case only requires us to review the substantive reasonableness of Defendant's sentence.

Our substantive reasonableness inquiry is governed by the factors set out in 28 U.S.C. § 3553(a). A sentence is substantively reasonable if it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (quotation marks omitted). Conversely, "[a] sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Robinson I*, 669 F.3d at 774 (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)).

"[T]he Guidelines should be the starting point and the initial benchmark" for determining a substantively reasonable sentence. *Gall*, 552 U.S. at 49. The district court "may not presume that the Guidelines range is reasonable," but must rather "make an individualized assessment based on the facts presented." *Id.* at 50. A court must take into account, however, "the extent of the deviation" from the Guidelines to ensure that "the justification is sufficiently compelling to support the degree of the variance." *Id.* It is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.*, *cited in Robinson I*, 669 F.3d at 775.

## II.  Analysis

### A. The District Court's Inadequate Consideration of the Seriousness of the Crime, the Need for Deterrence, and the Need to Avoid Sentencing Disparities

The district court's sentencing colloquy and later written opinion reflect the same flaws we identified in overturning Defendant's first sentence:  a failure to take into account the seriousness of Defendant's particular crime, the lack of serious consideration for the need for deterrence, and a failure to appropriately analyze the need to avoid unwarranted sentencing disparities.

#### 1.  Seriousness of the Offense

In addressing the sentencing factor concerning the "need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," we previously wrote that "[c]hild pornography is, without qualification, a serious crime." *Robinson I*, 669 F.3d at 776 (citing and discussing § 3553(a)(2)(A)). We emphasized that Defendant's crime was particularly serious because of the high number of pornographic images of children Defendant possessed, the violent and severely abusive content of some of those images, and the fact that Defendant paid for a subscription to a website providing images of child pornography, thereby adding to the financial incentive for others to abuse children and create child pornography. *Id.*

On remand, the district court acknowledged that child pornography "is a terrible crime." (R. 57, Resentencing Transcript, PageID# 275.) However, the district court failed to consider— or even mention—the factors that made Defendant's criminal conduct particularly egregious. In

fact, the district court's only comment with regard to why the crime was "serious" was to acknowledge that Congress designated a sentencing range of up to ten years. We think it clear that the district court's unwillingness to directly confront the nature of Defendant's individual conduct, and hold him responsible for such conduct, even after explicit direction from this Court, resulted in a substantively unreasonable sentence.

This Court's holding in a strikingly similar case, *United States v. Bistline*, 720 F.3d 631, 632 (6th Cir. 2013), is instructive. There, the district court twice imposed—despite an intervening reversal by this Court—a sentence of one day of confinement and ten years of supervised release in a case where the defendant possessed hundreds of images and dozens of videos of child pornography, including many depictions of young girls being raped by adult men. On the second appeal, this Court reiterated its prior holding that "a term of supervised release is simply not enough to reflect the seriousness of [Bistline's] offense," and that the lenient sentence imposed in that case "[did] not remotely meet the criteria that Congress laid out in § 3553(a)." *Id.* at 632. In that case, as here, the district court diminished the defendant's individual culpability despite his affirmative and deliberate acquisition of child pornography. *Id.* at 634. We held that, among other deficiencies, Bistline's sentence did not "'reflect the seriousness of the offense' [and did] not meet the retributive goal of 'provid[ing] just punishment for the offense." *Id.* (quoting § 3553(a)(2)(A)). Bistline's sentence, of course, was identical to the sentence we are reviewing today—and Bistline's conduct was comparable to and in some respects less culpable than Defendant's. The number of images Bistline was charged with was lower that the number at issue in Defendant's case. Indeed, while Defendant has been charged with possession of more than seven thousand pornographic images of children, this staggering number does not take into account the images contained on the fifty discs belonging to Defendant that were *not* examined by law enforcement.

Additionally, it does not appear that Bistline paid for the illicit images, though he did use a file sharing program that allowed the images to be distributed. The financial support Defendant contributed to the child pornography industry makes his crime particularly harmful. Those payments directly supported a sordid industry that thrives on the violent sexual abuse of children. "Children are exploited, molested, and raped for the prurient pleasure of . . . [those] who support suppliers of child pornography." *United States v. Goff*, 501 F.3d 250, 259 (3d Cir.

2007); *see also United States v. Christman*, 607 F.3d 1110, 1122-23 (6th Cir. 2010) (discussing the link between consumption of child pornography and the rape and abuse of children to produce that pornographic material); *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) ("Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded . . . . The greater the customer demand for child pornography, the more that will be produced."). The district court failed to acknowledge or take into account this disturbing aspect of Defendant's crime.

On the facts of the present case, we continue to believe that a noncustodial sentence does not "adequately reflect" the fact that Defendant possessed thousands of images that "involved the bondage, torture, and rape of prepubescent children," that he contributed to a market for those images—and for the abuse entailed in producing those images—by paying to access a child pornography website, and that he "knowingly acquired the images affirmatively, deliberately, and repeatedly, hundreds of times over the course of five years." *Robinson I*, 669 F.3d at 776.

### 2. Need for Deterrence

In our prior opinion, we highlighted that "[g]eneral deterrence is crucial in the child pornography context," citing to Sixth Circuit precedent that the § 3553(a) factors relating to deterrence and protecting the public "should be focused upon the market for such activities." *Id.* at 777 (discussing § 3553(a)(2)(B) and (c)). As we wrote then, "[t]he emphasis should be upon deterring the production, distribution, receipt, or possession of child pornography, and not a prediction of future sexual contact with children." *Id.* We held that Defendant's previous sentence, "which was devoid of any significant period of incarceration, home confinement, or substantial fine, undermine[d] the purpose of general deterrence." *Id.*

In its resentencing decision, the district court showed no more cognizance of the importance of general deterrence than it had the first time. In fact, the district court expressed its belief that Defendant's case would not generate any publicity that could deter others, and even made light of the absence of any press in the courtroom. A court should not require evidence of likely publicity before taking into account the Congressional sentencing goal of deterrence, a goal that this Court has found particularly salient in the child pornography context. *Id.*; *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010).

The district court also expressed its belief that Defendant had shown "in the laboratory of life" that he had been specifically deterred over the four years of probation from possessing child pornography again or committing any other crime. While this observation is unobjectionable as far as it goes, we think the district court placed unreasonable weight on the factor of specific deterrence when it explained that Defendant's successful record on probation "makes this an extraordinary case" and would justify "an extraordinary variance." (R. 57 at 282.) We cannot agree that the failure to reoffend justifies an extraordinary variance.

### 3. Unwarranted Sentence Disparities

In vacating Defendant's prior sentence, this Court also relied on § 3553(a)(6). *Robinson I*, 669 F.3d at 777-78. Section 3553(a)(6) requires sentencing courts to consider the need "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." We emphasized that the district court should consider the aspects of Defendant's crime that made it particularly serious, relative to the typical offense charged under the same statute. 669 F.3d at 778. We recognized that "the sentencing guidelines relating to child pornography have generated much controversy," and that some enhancements that commonly arise in child pornography convictions, like the use of a computer, may not meaningfully reflect a difference in culpability or harm. *Id.* However, we noted that six levels of enhancements applied in Defendant's case resulted from the fact that "the visual conduct included depictions of prepubescent children being subjected to rape and sadomasochistic or violent conduct," and we observed that "[t]hese enhancements have received far less criticism than that of using a computer." *Id.* Additionally, although we expressed "some doubt that the number of pictures alone captures the gravity of the crime of possession of child pornography" in the typical case, we found that these concerns did not apply in Defendant's case because he affirmatively acquired child pornography over a five year period and even paid money for some of those images. *Id.*

On remand, the district court again failed to analyze the need to avoid unwarranted disparities in light of the nature of Defendant's individual conduct, as reflected in the enhancements. Instead, the court discussed a number of defendants it had recently sentenced to supervised release for child pornography convictions pursuant to plea agreements with the

prosecutor's office.[1] The district court neglected to consider the national scope of the disparities at issue in § 3553(a)(6), *United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007) (a district court is required to consider national disparities in sentencing, and may exercise its discretion to consider disparities among co-defendants), and it failed to consider whether Defendant's non-custodial sentence might contribute to unwarranted sentencing disparities in light of the gravity of Defendant's conduct relative to other child pornography offenders, *Robinson I*, 669 F.3d at 777-78; *see also* § 3553(a)(6) (identifying the "need to avoid unwarranted sentence disparities among defendants . . . who have been found guilty of *similar conduct*" (emphasis added)).

Indeed, the handful of noncustodial cases cited by the district court appear to be outliers. Just last year, another panel of this Court cited the statistic, set out by the Sentencing Commission in a report to Congress, that "fully *96.6 percent* of first-time child-pornography-possession convictions led to at least some prison time." *United States v. Elmore*, 743 F.3d 1068, 1076 (6th Cir. 2014) (emphasis in original) (citing U.S. Sentencing Commission, *Report to the Congress: Federal Child Pornography Offenses*, Chapter 6.C (2012)). A brief sampling of Sixth Circuit sentencing decisions in possession-of-child-pornography cases illustrates that sentences of significant terms of imprisonment are not unusual. *Elmore*, 743 F.3d at 1070 (affirming sentence of fifty-one months of imprisonment and ten years of supervised release); *United States v. Gamble*, 709 F.3d 541 (6th Cir. 2013) (affirming sentence of eighty-two months of imprisonment); *United States v. Bolton*, 669 F.3d 780 (6th Cir. 2012) (affirming sentence of seventy-two months of imprisonment) (conduct involved distribution of the images through a peer-to-peer file-sharing program); *United States v. Rigsby*, 445 F. App'x 838 (6th Cir. 2011) (affirming sentence of sixty months of imprisonment); *United States v. Myers*, 442 F. App'x 220 (6th Cir. 2011) (affirming sentence of sixty months of imprisonment); *United States v. Staten*, 435 F. App'x 422 (6th Cir. 2011) (affirming sentence of seventy-two months of imprisonment); *United States v. Woods*, 421 F. App'x 554 (6th Cir. 2011) (affirming sentence of 110 months of imprisonment); *United States v. Edmiston*, 324 F. App'x 496 (6th Cir. 2009) (per curiam) (affirming sentence of one year and one day); *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008) (affirming sentence of sixty-six months of imprisonment) (crime involved images of

---

[1]We note that the sentences imposed by the district court in the other cases were not appealed and therefore their reasonableness has not been reviewed by this Court.

prepubescent minors and sadistic images); *United States v. Burke*, 252 F. App'x 49 (6th Cir. 2007) (affirming sentence of twenty-four months of imprisonment and three years of supervised release) (crime involved images of prepubescent minors and images portraying sadistic or masochistic conduct).

The deficiency of the district court's analysis of potential unwarranted sentencing disparities on a national level contributed to the imposition of a substantively unreasonable sentence. *See Robinson I*, 669 F.3d at 774 ("A sentence may be considered substantively unreasonable when the district court . . . fails to consider relevant sentencing factors").

**B. New Mitigating Evidence**

The district court heavily relied on new mitigating evidence in connection with its extraordinary variance from the guidelines recommendation. At resentencing, Defendant submitted evidence of significant mental illness that had been previously undiagnosed. Following his conviction, Defendant allegedly made three suicide attempts. He contends that after the first attempt, he repeatedly experienced auditory hallucinations that consisted of voices telling him to kill himself. His suicide attempts resulted in significant periods of inpatient treatment. Based on his medical records from those hospitalizations and an evaluation of Defendant, a psychologist retained by defense counsel diagnosed Defendant with schizoaffective disorder. The psychologist also noted other possible diagnoses, including major depression with psychotic features. Additionally, the psychologist's report characterized Defendant's behavior in collecting over seven thousand child pornography images as a manifestation of "compulsive hoarding." Apart from his new arguments regarding mental illness, Defendant also argued at resentencing that his record on supervised release showed that he had been rehabilitated. The district court appeared to accept this argument based on the fact that Defendant had not reoffended during his time on supervised release. As we have already discussed, the district court unreasonably characterized Defendant's supervised release record as "extraordinary."

The district court was fully entitled to take post-sentencing mitigating evidence into account in considering the § 3553(a) factors. Indeed, the Supreme Court has instructed that "highly relevant—if not essential—to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Pepper v.*

*United States*, 131 S. Ct. 1229, 1235 (2011) (alteration and internal quotation omitted). In *Pepper*, the Court held that a district court could, and should, consider evidence of post-sentencing rehabilitation when resentencing a defendant. *Id.* Evidence of a criminal defendant's significant mental illness, whether occurring before or after the initial sentencing, is equally relevant to crafting a just sentence under § 3553(a). As the Supreme Court has repeatedly emphasized, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996), *quoted in Rita*, 551 U.S. at 364 (Stevens, J., concurring), *Gall*, 552 U.S. at 52 (majority opinion), and *Pepper*, 131 S. Ct. at 1239-40. For that very reason, 18 U.S.C. § 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

We do not doubt that Defendant's contentions regarding mental illness, if credible, could qualify as a compelling justification that may support a significant downward variance from the Guidelines range. *See Gall*, 552 U.S. at 50; *Pepper*, 131 S. Ct. at 1235, 1239-40. Indeed, the government appears to agree with this assessment. At the sentencing hearing, the government explained that its recommendation of three years of confinement was "down well below 50 percent of the guideline range applicable to Mr. Robinson," and that it made that recommendation "despite the much higher guideline range, in recognition of some of the personal characteristics of Mr. Robinson, including some of the mental health issues that were identified by [defense counsel] in her memo, as well as by Probation." (R. 57 at 263.) The district court not only rejected the government's below-guidelines recommendation, it also rejected Defendant's own proposal that would have entailed a lengthy period of home confinement. The district court explained that it saw no need to impose home confinement "because that would be pandering to the Sixth Circuit for no reason." (*Id.* at 288.) It also stated, without explanation, that home confinement "would be contraindicated in terms of [Defendant's] mental health and his continued progress." (*Id.*)

Although the mitigating evidence appears significant, its presence in the record cannot cure the defects in the district court's analysis of the § 3553(a) factors discussed above. *See Bistline*, 720 F.3d at 634 (district court erred in "minimizing or disregarding altogether the serious factors that favor a more severe [sentence]"). The district court plainly failed to recognize the seriousness of Defendant's individual conduct. It indicated that it would not seriously consider the need for general deterrence, despite clear guidance from this Court's previous opinion that general deterrence was an important sentencing goal in child pornography cases, particularly where defendants contribute to creating a market by paying to access the illicit images. And the district court erred in neglecting the national scope of the disparities inquiry. Each of these failures strongly points to substantive unreasonableness, and they fly in the face of this Court's unmistakable guidance in *Robinson I*. *See* 669 F.3d at 774. On these facts, we cannot find that the district court's reliance on significant mitigating evidence rendered the sentence reasonable.

## III. Reassignment

Although not requested by the government, we conclude that the case must be reassigned for resentencing by another district court judge. Under 28 U.S.C. § 2106, this Court has the power to order reassignment of a case on remand. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 580 (6th Cir. 2013). The principal factors considered in determining whether reassignment is appropriate include "(1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Rorrer v. City of Stow*, 743 F.3d 1025, 1049 (6th Cir. 2014) (quoting *United States ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 532-33 (6th Cir. 2012)).

On the nearly identical facts of *Bistline*, this Court ordered reassignment because the record demonstrated that the "original judge would reasonably be expected . . . to have substantial difficulty in putting out of his mind previously-expressed views or findings[.]" *Bistline*, 720 F.3d at 634-45 (alterations in original) (quoting *United States v. Garcia-Robles*, 640

F.3d 159, 168 (6th Cir. 2011)).  There, as here, the district court refused on remand to heed the guidance of this Court and reimposed a sentence that failed to reflect the seriousness of a child pornography crime.  *See id.*  As in *Bistline*, we believe that the first factor weighs strongly in favor of reassignment.  The district court here has made plain that it would consider it "pandering" to this Court to impose a sentence of confinement, and it has now twice refused to confront the gravity of Defendant's conduct.  We are not confident that it will be able to put its previously expressed views aside in approaching the task of resentencing Defendant.  The other two factors do not weigh against reassignment.  In particular, we note that the record in this case is not particularly voluminous, nor would it entail substantial waste or duplication for another judge to familiarize himself with the case in preparation for resentencing.

## CONCLUSION

For the foregoing reasons, we **VACATE** Robinson's sentence, and **REMAND** the case for reassignment to another district court judge and for resentencing.