NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0592n.06

No. 21-2757

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Dec 21, 2021 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MARY TARAZI, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

Before: SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

SUHRHEINRICH, Circuit Judge. Mary Tarazi, who is serving a six-month sentence for her supervised-release violation, challenges the substantive reasonableness of that sentence. Finding no abuse of discretion, we affirm the judgment of the district court.

**I.**

In 2016, Tarazi was convicted under 18 U.S.C. § 844(a) for willfully making a bomb threat against the Spaulding for Children organization in Southfield, Michigan.[1] She was sentenced to time served followed by one year of supervised release. *Id.*

That supervision ended in November 2018 and, within a four-day span that month, Tarazi made 23 harassing phone calls to Spaulding. Then she called in another bomb threat to the facility.

---

[1] In 2013, Tarazi's son was removed from the home and placed at Spaulding. Tarazi eventually lost custody of her son. *Id.*

*Id.* Tarazi was indicted, again, for willfully making a bomb threat against Spaulding. She pleaded guilty (before a different district court judge) and was sentenced to seven months' time served, to be followed by 36 months' supervised release.

Tarazi racked up five alleged violations of her supervised-release conditions within the first year and a half. *See* R. 23 ID 124–25 (Violation Report). At her revocation hearing to address those five allegations, Tarazi initially admitted to four of them: (1) failing to allow her probation officer to visit at any time; (2) failing to participate in approved mental health counseling; (3) failing to take all prescribed medications; and (4) failing to refrain from making any threats. (The government agreed to dismiss the fifth violation.) In the next breath, however, Tarazi walked that admission back, claiming that "most of [the charges] are not valid," that she had "not committed them," and that she "d[idn't] remember that happened." *Id.* at 152. Specifically, Tarazi stated that she always made herself available to speak to her probation officer and that the probation officer did not show up at the time promised. *Id.* at 153–54.

At that point, Tarazi's counsel asked to introduce the probation officer's testimony to provide the factual basis for the charges. *Id.* at 154. Tarazi's probation officer then detailed the underlying facts of each violation. *Id.* at 154–66. Tarazi's counsel explained that Tarazi "felt she was being harassed by the probation department . . . that the therapist was not really interested in her therapy" and that she had not been adequately instructed regarding her medications. *Id.* at 165. And her threats were not meant as "threats" but merely as expressions of her frustration. *Id.* at 165–66. She ultimately denied all of the charges. *See id.* at 168–73.

The district court found Tarazi guilty of the violations and sentenced her to six months in prison, rather than the ten months the government asked for (the top of the guideline range), or Tarazi's requested four-month term. The court explained that "[t]his case originated because

[Tarazi was] threatening people." *Id.* at 176. Furthermore, Tarazi had "had the privilege of being on supervision . . . instead of getting jail time," which meant that "when the probation officer tells you to do something, you have to do it, whether you like it or not." *Id.* at 177. The court stated that it took Tarazi's violations "pretty seriously," that it looked at her background and history, and that it did "understand and remember a little bit of that," *id.,* including "another case in front of another judge where [Tarazi] w[as] threatening people," *id.* at 176. The court chose a sentence that would deter not only Tarazi, but others, from "go[ing] around threatening people" out of frustration or aversion. *Id.* at 177–78. The court revoked Tarazi's supervision and sentenced her to six months in custody. The court imposed no additional supervised release.

## II.

Tarazi challenges the substantive reasonableness of her sentence. A sentence is substantively unreasonable from a defendant's perspective if it is too long because the court placed too much emphasis on some 28 U.S.C. § 3553(a) factors and not enough on others. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Our review of the district court's decision is "highly deferential," *id.*; we review only for abuse of discretion, *Gall v. United States*, 552 U.S. 38, 51 (2007). And we presume a within-guidelines sentence to be reasonable. *See United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

Before revoking a term of supervised release, a district court must consider the 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3583(e)(3). And "[e]vidence of a criminal defendant's significant mental illness, whether occurring before or after the initial sentencing, is . . . relevant to crafting a just sentence under § 3553(a)." *United States v. Robinson*, 778 F.3d 515, 523 (6th Cir. 2015).

Tarazi contends because the district court was aware of her special mental-health conditions, it should have perceived the violations of the conditions of her supervision as caused

by her mental health and not as evidence of willful disrespect of the terms of supervision. More to the point, Tarazi asserts that "[i]nstead of considering [her] mental health as potential mitigation, the district court considered it aggravating and more deserving of punishment," which is "substantively unreasonable."

The district court considered Tarazi's background and history as well as the nature of her conduct. As Tarazi acknowledges, the district court was aware of her "mental health challenges," but felt that the nature of her conduct—a history of threatening people (which included the prior bomb-threat conviction)—as well as a poor record on supervision, and the need for deterrence, were the paramount concerns. The court was not obligated to treat Tarazi's mental illness as mitigating. *United States v. Stamp*, 790 F. App'x 680, 684 (6th Cir. 2019). Indeed, the Supreme Court has instructed that a sentencing judge must "'consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Robinson*, 778 F.3d at 523 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)); *Stamp*, 790 F. App'x at 684. The district court weighed Tarazi's situation against the potential for more threatening conduct as well as her recalcitrance during supervised release. On this record, we cannot say that the district court gave too little weight to Tarazi's mental condition. Accordingly, we find that Tarazi's sentence is substantively reasonable.

**AFFIRMED**.