NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0120n.06

No. 23-3465

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 14, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| DANIEL GWIN, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: COLE, CLAY, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. In 2022, Daniel Gwin pleaded guilty to nine felony counts stemming from his role in a conspiracy at his workplace. Gwin was a manager at a family-owned medical research center that we refer to as "Company 1." Gwin, along with seven other Company 1 employees, fabricated the results of clinical trials for recently developed medications, which pharmaceutical companies then presented to federal regulators in seeking approval to make these new drugs available to the public.

The district court sentenced Gwin to a below-guidelines sentence of 30-months' imprisonment. Gwin claims that this sentence was both procedurally and substantively unreasonable, arguing that the district court did not sufficiently explain why it sentenced him to several more months than two of his coconspirators, and that it did not adequately weigh the mitigating factors which, in his view, mandated a lesser sentence. Because the district court did not abuse its discretion in sentencing Gwin, we affirm.

**FACTUAL BACKGROUND**

In 2012, Daniel Gwin began a position as a study coordinator at Company 1. Company 1 was a research organization owned by Amie Demming and Debra Adamson—a mother and daughter team—with offices in Ohio and Tennessee. The company employed multiple family members, including William and Ashley Adamson, but Gwin was not related. Company 1 conducted FDA-required clinical trials of investigative drugs for pharmaceutical companies. Clinical trials are necessary to ensure that a pharmaceutical company's new drug is safe and effective for human use. As a study coordinator in the Cleveland-area office, Gwin was responsible for managing the trials for various of Company 1's clients, and in doing so he supervised other research employees.

The conspiracy began in 2013, about six months after Gwin took the job. Demming was the ringleader and developed the scheme when the company began to face financial troubles. Gwin states that Demming harassed, bullied, and intimidated him, and that he feared losing his job if he did not participate in the scheme.

The scheme, roughly described, was as follows: Company 1 employees falsely inflated the number of research participants in the clinical trials, then Company 1 billed its clients for the nonexistent work. Gwin and his colleagues fabricated test subjects from whole cloth, registered patients for studies without consent, falsified laboratory results, and collected payment for each phony participant. At times, Gwin even substituted his own blood and medical information for that of real study participants. As a study coordinator, Gwin signed informed consent forms for other employees who fraudulently registered themselves in clinical trials. Company 1 sent these false clinical results to its pharmaceutical clients, who then submitted the results to the FDA in seeking approval that their drugs were safe and effective.

Because Gwin's claim rests on the alleged sentencing disparity with his coconspirators, we describe not only his culpability, but also that of William and Ashley Adamson, whom Gwin points to as the most relevant comparators. William and Ashley Adamson were Amie Demming's brother and sister-in-law, and they managed the Tennessee offices.

The three employees were responsible for similar amounts of economic loss. During the course of the conspiracy, eight pharmaceutical companies paid Company 1 a total of $6,552,903 for—unbeknownst to them—fraudulent clinical trials. Gwin was personally responsible for little over $2.8 million of that amount, the third highest of the defendants. William Adamson caused $2.72 million in loss and Ashley Adamson caused $2.94 million in loss.

The three employees were also paid under a similar compensation structure. Company 1 paid Gwin and the Adamsons an annual salary and a year-end bonus. The bonus was based on the company's profits and the employee's individual performance, which was tied to the number of patients the employee enrolled in studies. Gwin had a starting salary of $43,500, and Ashley Adamson, who began around the same time, had a starting salary $41,600. No party argued that their salaries differed markedly in subsequent years. In their first years, Gwin and Ashley Adamson received bonuses of $500 and $1,800, respectively, while the next year they received $1,500 and $1,800, respectively.

The three employees' pleas, however, looked different. The Adamsons pleaded guilty to one count of conspiracy to commit mail fraud and wire fraud. The district court sentenced William to 22 months' imprisonment and Ashley to 27 months.

Gwin pleaded guilty to nine counts—one count of conspiracy to commit mail fraud and wire fraud, seven counts of mail fraud, and one count of conspiracy to defraud the United States. At sentencing, the court granted Gwin a three-level reduction for acceptance of responsibility.

That, combined with Gwin's lack of criminal history, resulted in a range of 33 to 41 months under the Sentencing Guidelines. After weighing the aggravating and mitigating factors, the district court varied downward, giving Gwin a below-guidelines sentence of 30-months in prison followed by three years of supervised release, a mandatory $900 special assessment, and $2,841,792 in restitution.

## ANALYSIS

On appeal, Gwin argues that his sentence was both procedurally and substantively unreasonable. We review both his procedural and substantive reasonableness claims for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007).[1] We address each challenge in turn.

## I.     Procedural Reasonableness

In reviewing whether a sentence was procedurally unreasonable, we look to see whether the district court "(1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any . . . decision to deviate from the advisory Guidelines range" or rejection of the parties' arguments that it should deviate. *United States v. Bolds*, 511 F.3d 568, 581 (2007).

Gwin urges us to reverse on the third requirement, arguing that the district court did not adequately articulate why he received a longer sentence than either William or Ashley Adamson. He emphasizes that he received the second highest sentence in the conspiracy—just behind

---

[1] The government urges us to review the procedural reasonableness claim for plain error rather than for an abuse of discretion because it says that Gwin did not adequately preserve his objection at the sentencing hearing. We need not decide the preservation question because Gwin's challenge fails even when we review for an abuse of discretion, as we do when an objection is adequately preserved.

Demming, the leader—even though his calculated loss was less than Ashley Adamson's (27 months), and he did not substantially benefit from the conspiracy because he was not a family member, like William Adamson (22 months). He characterizes the district court's analysis as disregarding his culpability relative to his coconspirators. But that's not accurate.

The district court carefully considered the comparative sentences of the coconspirators in sentencing Gwin. Before it made its decision, the district court discussed the other defendants and specifically asked whether Ashley and William Adamson were relevant comparators in terms of culpability. In response, the government compared these three coconspirators with respect to the amount of loss they caused, their financial gains, and their levels of participation in the conduct comprising the conspiracy.

After the parties concluded their arguments and the district court turned to its sentencing analysis, the court *twice* mentioned its desire to avoid unwanted sentencing disparities. It first said that it "need[ed] to determine the need for the sentence imposed, keeping in mind all of the factors, including the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." Sent'g Tr., R. 341, PageID 2361. It also noted that the circumstances of Gwin's case were particularly "alarming" given Gwin's "training and . . . that he was entrusted to train others." *Id*. at PageID 2362. The district court then went on to say, yet again, that it had to reach a decision that "not only avoid[ed] unwarranted sentencing disparities among the group of national defendants with similar records who have been found guilty of similar conduct" but also "to some degree" the "other codefendants in this case." *Id*. at PageID 2363. The court explained that each codefendant's sentence was based on "their own unique backgrounds and characteristics and their own unique involvement in the crime or crimes that were committed." *Id*.

The district court sentenced Gwin to three more months than Ashley Adamson and eight more months than William Adamson. While the district court did not explicitly address the several-month difference, it did not have to. *See United States v. Duane*, 533 F.3d 441, 451–52 (6th Cir. 2008). And the three coconspirators, even if comparable, were not entirely similarly situated. The Adamsons pleaded to only one count, compared to Gwin's nine. *See United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008) ("Disparities between the sentences of coconspirators can exist for valid reasons, such as . . . the offenses of conviction."). The district court also considered aggravating factors unique to Gwin. As the court mentioned, Gwin was one of the few employees that interfaced with clients, and, on one occasion, he even handed fabricated evidence to a client asking questions about his clinical trial. He also had a trusted role in the field and abused that trust.

Gwin, however, argues that the district court's decision was procedurally deficient for not accounting for the several-month difference. The best case he cites is *United States v. Wallace*, in which we reversed a sentence that was twice as long as that of a coconspirator who played a bigger role in the conspiracy. 597 F.3d 794, 803–804 (6th Cir. 2010). There, the government's arguments explaining the disparity "were never adopted or even acknowledged by the district judge." *Id.* at 802. We stressed that "no part of the sentencing transcript" showed that the lower court "ever considered" the disparity. *Id.* That is not the case here, as Gwin even admits that the district court addressed the issue—he just disagrees with its resolution. Further, the defendant in *Wallace* was sentenced to twice as much time as her co-conspirator. *Id.* The alleged disparity between the Adamsons' sentences and Gwin's sentence—eight and three months respectively—is nowhere near as stark. We thus conclude that there was no procedural unreasonableness in Gwin's sentencing.

## II.    Substantive Reasonableness

Next, we decide whether Gwin's sentence was substantively unreasonable. In answering that question, we turn to 18 U.S.C. § 3553(a) and determine whether the district court considered the relevant sentencing factors. *United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015). "A sentence is substantively reasonable if it is proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *Id.* (internal quotation marks omitted). Conversely, we will find a sentence substantively unreasonable if the defendant shows that the district court selected a sentence "arbitrarily," based the sentence on "impermissible factors," failed to consider relevant sentencing factors, or gave "an unreasonable amount of weight" to any pertinent factor. *Conatser*, 514 F.3d at 520. We presume that a below-guidelines sentence, as we have here, is reasonable. *United States v. Harris*, 636 F. App'x 922, 929 (6th Cir. 2016); *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013) (stating that defendants seeking to overturn a below-guidelines sentence "bear a heavy burden.").

As the sentencing transcript reveals, the district court carefully weighed the § 3553(a) factors. In explaining the sentence, the district court stressed mitigating factors such as Gwin's two children, lack of priors, difficult childhood, accusations of workplace harassment, and fear of losing his job. It also pointed to aggravating factors, such as Gwin's years-long participation in the scheme, harm to pharmaceutical clients, experience and training in clinical research, dishonest interactions with patients and clients, and falsification of records using his own medical data. The court, evidently finding the mitigating factors compelling, varied down one level.

Gwin challenges how the district court weighed the § 3553(a) factors, contending that the district court put too much emphasis on Gwin's conduct relative to others in the conspiracy and

not enough emphasis on his lack of criminal history, the pressure he was under to join the conspiracy, and his low likelihood of recidivism. Because the court mentioned neither deterrence nor public protection, Gwin argues that the court undervalued those considerations.

These arguments show, at most, that the factors could have been weighed differently, not that the district court abused its discretion in weighing them here. *See Conatser*, 514 F.3d at 520–23. The district court's failure to recite concepts like recidivism and deterrence does not undermine its conclusion. The district court need not discuss each factor individually or address every argument relating to those factors. *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006). Rather, the district court's detailed explanation assures us that it carefully considered all the relevant information presented by the parties in light of the § 3553(a) factors, including mitigation evidence. Therefore, Gwin's challenge to the substantive reasonableness of his sentence fails.

## CONCLUSION

Because the district court did not abuse its discretion in sentencing Gwin, we affirm its judgment.